UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JEFFREY A. BRYAN,

                Plaintiff,

v.                                        Case No.  5:05-cv-94-Oc-10GRJ

BRANDON SPILLMAN,

                Defendant.
_____

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Plaintiff's Motion For Summary Judgment (Doc. 8) to which Defendant has responded and filed a Response and a Motion For Summary Judgment ("Cross Motion"). (Doc. 12.) Plaintiff has responded to Defendant Spillman's Cross-Motion for Summary Judgment. (R. 18.) Defendant also has filed a Supplemental Motion For Summary Judgment (R. 26) to which Plaintiff has responded. (R. 27.) Accordingly, this matter is ripe for review. For the reasons discussed below Plaintiff's Motion for Summary Judgment (Doc. 8) is due to be **DENIED** and Defendant's Cross Motion and Supplemental Motion for Summary Judgment (Docs. 12 & 26) are due to be **GRANTED**.

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

## I. BACKGROUNDS AND FACTS

### A. The Events on January 20, 2005

On January 20, 2005, Defendant Brandon Spillman - a Marion County Deputy Sheriff - entered the Lakes and Meadows subdivision in Citra, Florida to investigate an abandoned car.[2] This area is known as a high crime neighborhood.[3] Someone in the neighborhood told Deputy Spillman that a man named "Jerry" owned the car. Defendant was also told that Jerry was "friends with" a man named Jeff, who lived at Lawrence Barber's mobile home.[4] Deputy Spillman drove his marked patrol vehicle to what he believed was Mr. Barber's mobile home in order to find Jerry, the owner of the abandoned car.[5] Deputy Spillman walked toward the residence,[6] and, according to Deputy Spillman, when he was within five feet of the mobile home, he smelled marijuana.[7]

The outside of the mobile home was not well lit.[8] Defendant knocked on the front door,[9] and a woman, Laura Clayton ("Clayton"), answered it. Deputy Spillman avers that

---

[2] Doc. 12, Ex. A ("Spillman Aff.") ¶ 3.

[3] *Id.*

[4] Spillman Aff. ¶ 4.

[5] *Id.* ¶ 5; Doc. 1 § IV(8). Pursuant to 28 U.S.C. §1746, Plaintiff verified the facts in the complaint under penalties of perjury..

[6] Spillman Aff. ¶ 6; Doc. 1 § IV(2).

[7] Spillman Aff. ¶ 6.

[8] Spillman Aff. ¶ 7; Doc. 1 at § IV(4).

[9] *Id.*; Doc. 1 § IV( 3,4).

he continued to smell marijuana. When Clayton opened the door smoke came out of the residence.[10] Deputy Spillman and Plaintiff saw each other at this point,[11] and Plaintiff quickly intervened, coming through the door of the mobile home and forcing Deputy Spillman to back down the steps.[12] Deputy Spillman then told Plaintiff that he was looking for a man named Jerry.[13]

Plaintiff was wearing blue jeans and a loose fitting shirt.[14] Due to Plaintiff's loose fitting clothing, lack of light, the high crime neighborhood, and Plaintiff's aggressive manner, Deputy Spillman commenced a pat down search of Plaintiff to check for a weapon.[15] Defendant attempted to pat down Plaintiff's leg, but Plaintiff brushed Defendant's hand away.[16] Deputy Spillman claims that during this part of the search he patted down Plaintiff's right leg with one hand on the outside of the leg near a pocket and one hand on the inside of the thigh. Plaintiff pushed away the hand on the outside of the

---

[10] Spillman Aff. ¶ 6; Doc. 1 § IV(5, 7).

[11] Spillman Aff. ¶ 6; Doc. 1 § IV(5). Plaintiff contends he did not know Defendant was in police uniform until both men were standing outside the mobile home. Doc. 1 § IV (7).

[12] Spillman Aff. ¶ 6; Doc. 1 § IV(7).

[13] Doc. 1 § IV (8); Doc. 8, Ex. A ("Clayton Aff.") ¶ 8. Pursuant to this Court's Order dated March 28, 2006, Plaintiff is precluded from offering the testimony of Clayton as evidence at trial because Plaintiff did not comply with his disclosure obligations under Rule 26(a)(1). Plaintiff failed to disclose Clayton's whereabouts so that she could be made available for a deposition. However, Clayton's affidavit was offered as evidence in Plaintiff's Summary Judgment Motion and to the extent the facts contained therein are admissible, they will be relied on concerning the parties' Motions for Summary Judgment. However, for the reasons discussed in this Order, regardless of the facts alleged in Clayton's affidavit, Plaintiff's Motion for Summary Judgment is due to be denied.

[14] Spillman Aff. ¶ 7.

[15] Spillman Aff. ¶¶ 7-8.

[16] Doc. 1 § IV(10); Spillman Aff. ¶ 8.

leg.[17] Deputy Spillman became suspicious that Plaintiff had a weapon or other

contraband in his pocket[18] and consequently Deputy Spillman directed Plaintiff to remove

everything from Plaintiff's pockets.[19] Plaintiff asserts that during the search, Defendant

grabbed Plaintiff's genitals, and Plaintiff told Defendant that he was hurting him.[20]

 Plaintiff also contends that Deputy Spillman told him he was under arrest, forced

Plaintiff onto the front fender of Defendant's patrol car while Plaintiff emptied his pockets,

and then handcuffed Plaintiff.[21] Defendant denies all of these allegations. Deputy

Spillman directed Plaintiff to sit in the back of his patrol car[22] while he called his

supervisor and spoke with Clayton.[23]  Defendant asked Clayton if Plaintiff had been

smoking marijuana in the mobile home. Clayton admitted that Plaintiff was smoking

marijuana and went inside to retrieve the marijuana.[24] Clayton gave Defendant a small

plastic bag containing a small amount of a material which appeared to be marijuana.[25]

Defendant then returned to his patrol car, opened the back door, and Plaintiff exited the

---

[17] Spillman Aff. ¶ 8.

[18] Spillman Aff. ¶ 8.

[19] *Id.*

[20] Doc. 1 § IV(10); Clayton Aff. ¶ 10.

[21] Doc. 1 at § IV(11, 12, 13); Clayton Aff. ¶¶ 11, 12, 13; Doc. 8, Ex. B, Affidavit of Lawrence T. Barber ("Barber Aff.") ¶¶ 6, 7, 9.

[22] Spillman Aff. ¶ 9; Doc. 1 § IV(14). Defendant asserts that he did not place Plaintiff under arrest, assault him at any time, nor place him in handcuffs. Spillman Aff. ¶¶ 8-9.

[23] Spillman Aff. ¶¶ 10-11.

[24] Spillman Aff. ¶ 11.

[25] *Id.*

vehicle.[26] Deputy Spillman had detained Plaintiff for only a short time, about five minutes, and explained to Plaintiff that he was not under arrest.[27] Deputy Spillman asserts that he warned Plaintiff against grabbing or acting aggressively toward law enforcement officers in the future because such conduct could cause him to be arrested.[28] Plaintiff contends that Deputy Spillman told Plaintiff he was not going to jail or being placed under "further arrest", but Defendant warned Plaintiff to forget about the incident or he would re-arrest Plaintiff and take him to jail.[29]

Lawrence Barber (Barber) drove up to the scene of the incident and claims he saw Plaintiff get out of the patrol vehicle and Deputy Spillman remove Plaintiff's handcuffs.[30] Deputy Spillman contends that Plaintiff, Deputy Spillman, and Barber went to move the abandoned vehicle. Defendant asserts that they could not push the car out of the roadway, so Deputy Spillman called a tow truck to have it removed.[31]

## B. Procedural History

Plaintiff filed his initial Complaint on February 10, 2005 (Doc. 1) which included four counts. Count I purports to allege claims for false arrest under 42 U.S.C. § 1983, Count II claims for excessive force under § 1983, Count III claims that Defendant

---

[26] Spillman Aff. ¶ 12; Doc. 1 § IV(16).

[27] Spillman Aff. ¶ 12, Doc. 1 § IV(17).

[28] Spillman Aff. ¶12.

[29] Doc. 1 § IV(17); Clayton Aff. ¶ 16; Barber Aff. ¶¶ 13-14.

[30] Spillman Aff. ¶ 13; Barber Aff. ¶¶ 6-7.

[31] Spillman Aff. ¶ 14. *See* Doc. 18, Ex. A, Incident Report. Barber contends that Defendant drove off alone and Plaintiff went back into his residence. Barber Aff. ¶ 15.

violated Plaintiff's Civil Rights under § 1983, and Count IV claims for violation of

Plaintiff's Fourth and Fifth Amendment Rights.[32] Plaintiff demanded damages, including

punitive damages, and costs and attorney's fees.[33] Defendant answered the Complaint,

denying all allegations therein and asserted various affirmative defenses including

qualified immunity.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment

is appropriate only when the Court is satisfied that "there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." In

applying this standard, the Court must examine the pleadings, depositions, answers to

interrogatories, and admissions on file, together with any affidavits and other evidence in

the record "in the light most favorable to the nonmoving party.[34] As the Supreme Court

held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial

burden of establishing the nonexistence of a triable issue of fact. If the movant is

successful on this score, the burden of production shifts to the non-moving party who

---

[32] Plaintiff's claims under the Fourth Amendment are subsumed in his allegations of illegal arrest and excessive force. Plaintiff also claims that Defendant had no right to enter his property. This allegation will be addressed below in the Discussion § III(C) of this Report and Recommendation. However, Plaintiff's claims under the Fifth Amendment are inapposite because the Fifth Amendment due process clause is only applicable against the federal government and federal officials. *See* Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997). Defendant is a state actor, a police officer with the Marion County Sheriff's Office. Thus, the Fifth Amendment is inapplicable because it provides no basis for relief in this case against a state official. Accordingly, Plaintiff has failed to raise a claim against the Defendant for violations of his Fifth Amendment due process rights. The Court will not address this claim any further in the body of this Report and Recommendation.

[33] In an Order dated March 10, 2005, the Court struck Plaintiff's claim for attorney's fees beause Plaintiff proceeded in this action *pro se.* (Doc. 7.)

[34] *See* Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

must then come forward with "sufficient evidence of every element that he or she must prove."[35] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

### III. DISCUSSION

### A.  Count I - Illegal Arrest

Count I of Plaintiff's Complaint purports to allege a claim against Defendant under 42 U.S.C. § 1983 for false arrest. It is well settled that § 1983, by itself, does not create any substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred."[36] Thus, the first step is "to isolate the precise constitutional violation with which [the defendant] is charged."[37] Plaintiff contends that Defendant had no "legal or lawful authority to arrest the Plaintiff." Defendant asserts that Plaintiff was never arrested and that Plaintiff's detention was constitutionally permissible under the Fourth Amendment to the Constitution.

The Fourth Amendment provides for freedom from unreasonable search or seizure.[38] To determine if an arrest has occurred, the Eleventh Circuit instructs that a court must find "at what point, 'in view of all the circumstances surrounding the incident,

---

[35] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

[36] Graham v. M.S. Connor, 490 U.S. 386, 393 (1989).

[37] Baker v. McCollan, 443 U.S. 137, 140 (1979).

[38] The Fourth Amendment to the Constitution states in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV.

a reasonable person would have believed he [she] was not free to leave.' "[39] The

Eleventh Circuit classifies police-citizen encounters into three tiers. In the first tier, the

Fourth Amendment is not implicated where there is no coercion or detention during a

police-citizen encounter.[40] However, the Fourth Amendment is implicated in the second

tier where, as here, a police officer briefly detains a citizen for investigatory purposes, or

in the third tier where a police officer holds a citizen pursuant to an arrest.[41] To justify

such detention and seizure under the Fourth Amendment in the investigatory context, the

police officer must show "a reasonable and articulable suspicion that the person has

committed or is about to commit a crime."[42] If the "totality of the circumstances"

demonstrates that the detention is too intrusive to be for merely investigatory purposes,

the encounter is considered an arrest. The arresting officer must establish probable

cause for the arrest.[43]

### 1. "Reasonable and Articulable Suspicion" to Detain

Defendant asserts, and Plaintiff does not dispute, that when Defendant was within

five feet of the mobile home, he smelled marijuana. Defendant also avers in his affidavit

that when Clayton opened the door of the mobile home, he was greeted with  smoke

which smelled of marijuana. Because possession and use of marijuana are illegal acts,

---

[39] United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989) (quoting United States v. Hammock, 860 F.2d 390, 393 (11th Cir. 1988)).

[40] *See id.*

[41] *See id.*

[42] *Id.; see also* Terry v. Ohio, 392 U.S. 1 (1968).

[43] Hastamorir, 881 F.2d at 1556.

many courts have found the smell of marijuana sufficient to provide an officer with a reasonable suspicion that a crime is being committed. This, in turn, also provides the officer with sufficient reason to search a vehicle or residence and detain those who are present during the investigation.[44]  Although Defendant initially approached the mobile home simply to speak with the occupants in order to find the owner of the abandoned vehicle, upon smelling marijuana in the home, Defendant had a sufficient reasonable suspicion to detain Plaintiff and question Clayton about marijuana use at the residence.

### 2. Circumstances of the Detention

Plaintiff contends that Defendant formally arrested him, rather than temporarily detaining him pursuant to an investigation, because Plaintiff was handcuffed and directed to sit in the patrol car. Defendant challenges Plaintiff's allegations that Defendant told Plaintiff he was under arrest and handcuffed him. However, the Court does not need to resolve this factual issue because even if Deputy Spillman handcuffed Plaintiff and made him sit in the patrol car, these facts are not sufficient to establish that Plaintiff was arrested.

When evaluating a claim of unlawful seizure under the Fourth Amendment, the Court must examine whether the actions taken by the officer were reasonable under the circumstances.[45] The use of handcuffs may be deemed reasonable if designed to provide for the safety of the officer. And their use does not automatically convert an

---

[44] *See, e.g.,* United States v. Gorthy, 550 F.2d 1051, 1052 (5th Cir. 1977); United States v. Barry, 394 F.3d 1070, 1078 (8th Cir. 2005); United States v. Cephas, 254 F.3d 488, 495 (4th Cir. 2001); United States v. Ozbirn, 189 F.3d 1194, 1200 (10th Cir. 1999).

[45] Graham v. M.S. Connor, 490 U.S. 386, 395 (1989).

investigatory detention into an arrest.[46] It is undisputed that Defendant did not know

Plaintiff, and Plaintiff confronted Defendant in an aggressive manner in a dimly lit, high

crime area, on the night in question. Deputy Spillman also could not complete his pat

down search because Plaintiff pushed away Defendant's hand when Defendant reached

the area around the pocket of Plaintiff's pants. Under these circumstances, it was

reasonable for Defendant to fear for his safety and restrain the Plaintiff in some manner

to prevent Plaintiff's interference while he conducted his investigation.[47]

Moreover, many courts have found that a suspect's detention in handcuffs, in a

patrol vehicle, for a reasonable period of time, does not convert an investigatory stop into

an arrest. [48] Here, Plaintiff was detained for no more than five minutes.[49] Additionally,

Defendant never charged Plaintiff with a crime. Deputy Spillman claims that upon

receiving the bag of marijuana from Clayton, he did not have enough evidence to charge

Plaintiff with constructive possession. He then concluded his investigation and released

---

[46] Hastamorir, 881 F.2d at 1556-57; see also U.S. v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995).

[47] See Hastamorir, 881 F.2d at 1556 (describing other factors a Court may consider when assessing whether an arrest has occurred, including the number of officers present and their demeanor, the display of weapons, the length of the detention, and the extent of physical restraints used.).

[48] See United States v. Sharpe, 470 U.S. 675, 686 (1985) (noting that during an investigatory stop, the police officers must act quickly and diligently to confirm or dispel their suspicions, and it must be necessary for the police to detain the suspect while conducting this investigation.); see also United States v. Gil, 204 F.3d 1347, 135 (11th Cir. 2000) (detaining handcuffed suspect in back of police car for approximately seventy-five minutes did not ripen into an arrest because the length and circumstances of the detention were deemed reasonable under the circumstances); Kilgore v. City of Stroud, 158 Fed. Appx. 944, 951 (10th Cir. 2005) (detaining handcuffed suspect in back of police car for approximately twenty to thirty minutes found not "to exceed the limits of an investigatory detention.")

[49] See Spillman Aff. ¶ 12.

Plaintiff.[50] Deputy Spillman filed an incident report concerning his attempt to locate the owner and move the abandoned car, but he made no mention of his encounter with Plaintiff.[51] Given the circumstances surrounding the encounter between Plaintiff and Defendant - including Plaintiff's brief detention in handcuffs in the patrol car  for a short period of time - the Court concludes that it was a reasonable action for Defendant to take to secure his own safety and prevent Plaintiff from compromising his investigation. Given the short duration of the detention and the absence of any evidence that Plaintiff was actually arrested and charged, Plaintiff's detention did not ripen into an arrest.

### 3. Damages

Furthermore, to recover damages in a § 1983 action, courts "are guided by certain common law tort principles of damages and causation."[52] For a claim of false arrest, the plaintiff must establish legal and proximate causation by "show[ing] that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue."[53] Aside from general allegations of Defendant "injuring" Plaintiff and causing pain in his Complaint,[54] Plaintiff has not provided any

---

[50] *See* Spillman Aff. ¶¶ 11-12.

[51] *See* Doc. 18, Ex. A, Incident Report.

[52] Jackson v. Sauls, 206 F.3d 1156, 1168 (11th Cir. 2000).

[53] *Id.*

[54] Doc. 1, § IV(12); Clayton Aff. ¶ 10 (Plaintiff "voiced his pain"); *See* Doc. 26, Ex. 1, Deposition of Jeffrey A. Bryan ("Bryan Dep.") 38:2-4, 19-21 (no visit to doctor after incident); 39:12-13, 20-21 (no visit to hospital or doctor); 40:7-9 (incurred pain); 41:12-13 (no bleeding), 17-18 (no permanent marks); 42:21-25 (no marks or bruises on right temple); 43:1-12 (no marks or bruises on face or torso); 43:13-25 (handcuff
(continued…)

evidence that he sustained serious or prolonged injury during his alleged arrest. Notably, there is no evidence that Plaintiff sought medical treatment for any injury relating to the incident in question.[55] Therefore, in the absence of any proof of damages, Plaintiff's claim in Count I must fail. Accordingly, Plaintiff's Motion for Summary Judgment is due to be denied and Defendant Spillman's Cross Motion is due to be granted with respect to Count I of Plaintiff's Complaint.

## B.  Count II - Excessive Force Under 42 U.S.C. § 1983

In Count II of Plaintiff's Complaint, Plaintiff alleges that Defendant deprived Plaintiff of his right to be free from excessive use of force because Defendant used such excessive force while unlawfully searching and arresting Plaintiff. Defendant contends that the pat down search of Plaintiff was constitutionally permissible and that under the "objective reasonableness" standard, Defendant did not use excessive force under the circumstances.

### 1.  Constitutionality of the Search

The law is well-settled that if an individual has been detained upon a reasonable suspicion of criminal activity, the officer can conduct a weapons search of the suspect to assure his own safety.[56] The standard by which such a search is assessed is whether " a

---

[54](…continued)
marks that quickly faded); 50:6-9 (did not visit doctor after accident), January 23, 2006.

[55] Bryan Dep. 38:2-4, 19-21; 39:12-13, 20-21; 50:6-9.

[56] *See, e.g.*, *Terry*, 392 U.S. at 30-33, United States v. Hunter, 291 F.3d 1302, 1307 (11th Cir. 2002); United States v. Aldridge, 719 F.2d 368, 372 (11th Cir. 1983).

reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."[57]

Defendant contends that Plaintiff voluntarily consented to the search by answering affirmatively to Defendant's request to turn his back and extend his arms.[58] Plaintiff, on the other hand, asserts that he did not consent to the search, but merely complied when Defendant initiated the search.[59] Nevertheless, given the circumstances of Defendant's encounter with Plaintiff, it was reasonable for Defendant to conduct the search. It is undisputed that the events in question occurred at night in a poorly lit area, and Plaintiff acted aggressively toward Defendant. Defendant contends, and Plaintiff does not dispute, that the encounter occurred in a high crime neighborhood, Plaintiff was wearing baggy clothes, and Defendant suspected drug activity.[60] In addition, Defendant was acting alone and did not know Plaintiff. Under these circumstances, it was reasonable for Defendant to conduct a pat down search of Plaintiff in order to assure his own safety.[61]

---

[57] Terry v. Ohio, 392 U.S. 1, 27 (1968).

[58] Spillman Aff. ¶ 7.

[59] Doc. 1 § IV(9).

[60] Hunter, 291 F.3d at 1306 ("Reputation of an area" and "proximity to illegal activity" may be considered when determining whether officer had reasonable suspicion to conduct a search and investigation.).

[61] See Aldridge, 719 F.2d at 372 ("Having made a valid investigative stop of a vehicle containing three men in a poorly lit area in the middle of the night pursuant to a radio report that the suspects may have been involved in criminal activity, Officer House was entitled to take reasonable measures to neutralize the threat of physical harm.").

## 2.  Use of Excessive Force

With respect to Plaintiff's claims that Defendant used excessive force, Defendant

denies Plaintiff's allegations of such use of force. However, Deputy Spillman argues that

even construing the facts in the light most favorable to Plaintiff, there are two reasons

why Plaintiff's excessive force claim must fail. First, Defendant argues that under the

objective reasonableness standard, Defendant's conduct would have been reasonable

under the circumstances. Second, Defendant contends that any use of force was *de

minimis* because Plaintiff sustained no injury, nor did he seek medical treatment after the

events in question.

A claim for excessive force is subsumed in a claim for an illegal stop or arrest

because the "damages for false arrest include damages for use of force to effect that

arrest."[62] However, because the Court has found that Plaintiff was subject to a legal stop,

a claim for excessive force must be treated as a discrete claim.[63]

The Supreme Court has held that when analyzing an excessive force claim where

such alleged force was used "in the course of making an arrest, investigatory stop, or

other 'seizure' of [Plaintiff's] person" the Fourth Amendment objective reasonableness

standard must be applied.[64] As the Court noted, "[o]ur Fourth Amendment jurisprudence

has long recognized that the right to make an arrest or investigatory stop necessarily

carries with it the right to use some degree of physical coercion or threat thereof to effect

---

[62] Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000) (citing Williamson v. Mills, 65 F.3d 155, 158-59 (11th Cir. 1995)).

[63] *Id.*

[64] Graham v. M.S. Connor, 490 U.S. 286, 388, 395 (1989).

14

it."[65]  The officer's actions must be "objectively reasonable" in light of the circumstances

as they unfolded at the time force was employed.[66] As discussed above, this Court finds

that the initial pat down search incident to Defendant's investigatory detention of Plaintiff

was lawful. Under these circumstances, Defendant had the right to use some physical

coercion or threat thereof to obtain Plaintiff's compliance with his investigation.

However, the Plaintiff asserts that the Defendant used excessive force during his

search and detention which included a "rough search of Plaintiff's genitals, " throwing

Plaintiff against Defendant's patrol car, and holding Plaintiff's head against Defendant's

car, causing pain to Plaintiff.[67] Defendant denies these allegations. However, even if the

facts as alleged by Plaintiff are taken as true it would be insufficient to establish a claim

for excessive force. The Eleventh Circuit has found the use of force far exceeding that

allegedly employed by Deputy Spillman in this case to be de minimis and reasonable

under the circumstances.[68]

---

[65] *Id.* at 396.

[66] *Id.* at 396-97.

[67] Doc. 1 at 4-5.

[68] *See, e.g.,* Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (single use of a taser gun was not excessive where Plaintiff suffered no serious injury and such force was deemed reasonably proportionate to calm belligerent Plaintiff during a traffic stop for inadequate illumination of a tag light); Durruthy v. Pastor, 351 F.3d 1080, 1094-1095 (holding that force was de minimis where police officer pulled Plaintiff to the ground, pinned his arms behind him, kneed him in the back, and handcuffed him); Nolin v. Isbell, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (finding de minimis force where Officer-Appellant grabbed Appellee from behind, threw him against a van, kneed in the back, pushed his head into the side of the van, searched his groin, and handcuffed him); Jones v. City of Dothan, Ala., 121 F.3d 1456, 1460 (finding amount of force used to be "minor" where officers threw Plaintiff against a wall, kicked his legs apart, required him to raise his arms above his head, and pulled a wallet from his pants, causing pain to Plaintiff who received minor medical treatment in his arthritic knee after the accident).

As the Supreme Court observed in *Graham*, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violated the Fourth Amendment."[69] In addition, in *Nolin v. Isbell,* where it was alleged that an officer "grabbed Appellee and shoved him a few feet against a vehicle, pushed [the officer's] knee into Appellee's back and Appellee's head against the van, searched Appellee's groin area in an uncomfortable manner, and placed Appellee in handcuffs"[70] --a similar sequence of events to those described in the instant case -- the Eleventh Circuit found the use of force to be *de minimis*.[71]

This Court must determine whether Defendant's actions were plainly unlawful in light of what a reasonable officer would have done under the circumstances. To make this determination the court may examine the need for the force, the amount of force used, and the injury inflicted. As discussed above, in light of the Plaintiff's threatening manner, the presence of marijuana, and the dimly lit high crime area where this incident occurred, the use of force to compel Plaintiff to cooperate with Defendant's investigation was reasonable. Moreover, while Plaintiff asserts that he "incurred a lot of pain"[72] Plaintiff did not allege any injury to a specific body part in his Complaint[73] and stated that he did

---

[69] 490 U.S. at 396-97 (internal quotations and citation omitted).

[70] *Nolin,* 207 F.3d at 1258 n.4; *see also* <u>Dominguez v. Metro. Miami-Dade County</u>, 167 Fed. Appx. 147, 150 (11th Cir. 2006) ("A suspect's discomfort does not make a procedure excessive" especially when the officer's "conduct was proportionate to the goal of the search" and Plaintiff sustained no injury.).

[71] *Id.*

[72] Bryan Dep. 40:7.

[73] At his deposition, Plaintiff stated that his right temple was injured, but there were no visible signs or symptoms of injury, nor did Plaintiff seek medical treatment after the incident. Bryan Dep. 40:21-25, 41:1-
(continued…)

not bleed,[74] had no bruises or marks,[75] and Plaintiff did not seek medical treatment

following this encounter with the Defendant.[76]

In the absence of evidence of permanent or sustained injury or damage to

Plaintiff, any force used by Defendant cannot be characterized as excessive under the

circumstances.[77] "The application of *de minimis* force, without more, will not support a

claim for excessive force in violation of the Fourth Amendment."[78] In light of the

applicable case law in this Circuit, the circumstances during the night in question, and

the absence of any damages, Defendant's use of force - even if applied in the manner

described by Plaintiff - was not excessive. Accordingly, Plaintiff's claim for excessive

force in Count II of the Complain fails as a matter of law and thus Plaintiff's Motion for

Summary Judgment is due to be denied and Defendant's Cross Motion for summary

judgment is due to be granted with regard to this count.

### 3. Qualified Immunity

Defendant also raises the affirmative defense of qualified immunity. Defendant

asserts that even if the Court finds he violated a constitutional right of the Plaintiff, the

---

[73](…continued)
17;  42:21-25; 43:1-2.

[74] *Id.* 40:6, 12.

[75] *Id.* 40:17; 42:21-24. Plaintiff stated that he had a mark on at least his left wrist from the handcuffs which faded quickly. *Id.* 43:17-25.

[76] *Id.* 50:2-9.

[77] *See* Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004).

[78] *Nolin*, 207 F.3d at 1257.

Court should find that Defendant is immune from suit because he did no violate a clearly established right.

"To receive qualified immunity, the public official needs to show that he was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred."[79] Once the public official establishes that he was acting within his discretionary authority, the burden shifts to the Plaintiff to establish that qualified immunity is not appropriate.[80] To evaluate claims of qualified immunity, the Court must apply the test delineated by the Supreme Court in *Saucier v. Katz*.[81] First, the court must determine that if "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right."[82] Second, "if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine whether the right was clearly established."[83] However, "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[84]

In the instant case, Defendant was clearly exercising his discretionary authority when he detained Plaintiff to investigate the use of marijuana at the residence. Plaintiff has failed to meet his burden to show that Defendant is not entitled to qualified immunity

---

[79] Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir. 2003).

[80] *See id.*

[81] 533 U.S. 194 (2001).

[82] *Durruthy*, 351 F.3d at 1087 (quoting *Saucier).*

[83] *Id.*

[84] *Saucier*, 533 U.S. at 201.

because the Court has determined, as discussed above, that even if the facts are taken

in the light most favorable to Plaintiff, Defendant's conduct did not violate Plaintiff's

constitutional rights. Because the Court finds that there was no violation of a

constitutional right, the Court does not need to address the second inquiry of the *Saucier*

analysis i.e. whether the constitutional violation was of a clearly established law or right.

Accordingly, because Defendant did not act unlawfully he also is entitled to qualified

immunity in this suit.

**C.      Count Three--Violation of Plaintiff's Civil Rights and Count Four--Violation
of  Plaintiff's Fourth and Fifth Amendment Rights**

In Count Four, Plaintiff claims that Defendant had no legal basis or authority to

enter his property. This claim is without merit because the Fourth Amendment is not

implicated when a police officer knocks on the front door of a residence and poses

questions to the occupants.[85]  Accordingly, Defendant did not violate Plaintiff's

constitutional rights when he entered Plaintiff's property and knocked on the door to the

mobile home in an attempt to determine the owner of the abandoned vehicle.

The remaining allegations in Counts Three and Four of Plaintiff's Complaint all

arise out of Plaintiff's claims in Counts One and Two for unlawful arrest, unlawful search,

and excessive force. Notably, Plaintiff does not raise any new arguments or allegations

under Counts Three and Four. Because the Court already has determined that as a

matter of law, Plaintiff was not unlawfully arrested, nor subjected to an unconstitutional

---

[85] United States v. Cephas, 254 F.3d 488, 493 (4th Cir. 2001) ("A voluntary response to an officer's knock at the front door of a dwelling does not generally implicate the Fourth Amendment, and thus an officer generally does not need probable cause or reasonable suspicion to justify knocking on the door and then making verbal inquiry.").

search, nor the victim of excessive force these same reasons support the denial of

Plaintiff's Motion for Summary Judgment with respect to these allegations in Counts

Three and Four.

Accordingly, Plaintiff's Motion for Summary Judgment with respect to Counts

Three and Four of the Complaint is also due to be **DENIED** and Defendant's Cross-

Motion for Summary Judgment and Supplement Motion for Summary Judgment (Docs.

12 & 26) are due to be **GRANTED**.

## IV. <u>RECOMMENDATION</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's Motion

For Summary Judgment (Doc. 8) be **DENIED**, Defendant's Cross-Motion for Summary

Judgment (Doc. 12) be **GRANTED** and the Clerk directed to enter final judgment in favor

of Defendant.

**IN CHAMBERS** in Ocala, Florida, on June 5, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
     The Honorable Wm. Terrell Hodges
     Senior United States District Judge

     Counsel of Record
     *Pro Se* Plaintiff